UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:98-cr-264-07-RCL |
| SHELTON MARBURY, | |
| *Defendant*. | |

## MEMORANDUM OPINION

In 1999, defendant Shelton Marbury and five others were charged, via a 90-count indictment, with various violations of federal and D.C. law for their participation in "a massive drug distribution organization in Southeast Washington, D.C." *United States v. Bostick*, 791 F.3d 127, 134 (D.C. Cir. 2015). In 2001, a jury convicted Mr. Marbury of nearly a dozen offenses, including first degree murder, assault with intent to kill, possession of a firearm during a crime of violence, and narcotics conspiracy. *See* Verdict Forms, ECF No. 685. The Court sentenced Mr. Marbury to 145 years in prison. *See* J., ECF No. 781. Mr. Marbury and his co-defendants appealed their convictions and the Circuit affirmed the judgments. *Bostick*, 791 F.3d at 135.

Mr. Marbury now moves *pro se* to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Def.'s Mot., ECF No. 957. The government opposes Mr. Marbury's motion and urges the Court to summarily deny Mr. Marbury's claims as without merit. Gov't Opp'n, ECF No. 962.

Upon consideration of Mr. Marbury's motion, the parties' submissions, the applicable law, and the record, the Court will **DENY** Mr. Marbury's Section 2255 motion.

## I.    BACKGROUND

The Circuit explained the factual history underlying Mr. Marbury's offense as the following:

1

During the 1980s and 1990s, [Mr. Marbury's co-defendant] Tommy Edelin purchased large quantities of drugs from wholesale suppliers in New York. In Washington, D.C., he provided the drugs to a group of mid-level distributors. Those mid-level distributors in turn sold the drugs to street-level dealers, who then sold to retail customers primarily in the Stanton Dwellings and Congress Park neighborhoods of Southeast Washington, D.C. . . .

In the course of their activities, Tommy Edelin and his associates committed numerous murders and shootings, often during clashes with rival drug crews. Those conflicts frequently followed a pattern: A dealer from a rival group would rob or attack one of Edelin's associates. Edelin would respond by ordering his associates to kill the attacker as well as members of the attacker's crew. Throughout the 1990s, several of Edelin's distributors and dealers, including the defendants here, participated in such violence. . . .

Shelton Marbury was a street-level dealer of crack cocaine. He operated at the lowest level of Tommy Edelin's distribution network. He committed two murders and participated in several shootings during the conflict with the Stanton Terrace Crew in 1996. . . . [Additionally,] Marbury regularly purchased resale quantities of crack cocaine from mid-level members of Tommy Edelin's organization, and they then redistributed those drugs.

*Bostick*, 791 F.3d at 136, 140.

After a multi-year joint investigation by the Federal Bureau of Investigation and the D.C. Metropolitan Police Department, Tommy Edelin, Mr. Marbury, and four other members of the conspiracy were charged with almost one hundred crimes under both federal law and the D.C. Code. *Id.* at 137.

Following a lengthy trial, a jury found Mr. Marbury guilty of the following offenses:

| Count No. | Description | Statute |
|---|---|---|
| 1 | Conspiracy to distribute and possession with intent to distribute a controlled substance | 21 U.S.C. § 846 |
| 19 | Assault with intent to murder while armed of Edgar Watson | D.C. Code §§ 22-503, -3202, and -105 |
| 20 | First-degree murder while armed of Anthony Payton | D.C. Code §§ 22-2401, -3202, and -105 |
| 35 | First-degree murder while armed of Robert Keys | D.C. Code §§ 22-2401, -3202, and -105 |
| 68 | Possession of a firearm during the assault with intent to murder while armed of Edgar Watson | D.C. Code §§ 22-3201(b), -3204(b) |

2

| 69 | Possession of a firearm during the first-degree murder while armed of Anthony Payton | D.C. Code §§ 22-3201(b), -3204(b) |
|---|---|---|
| 70 | Possession of a firearm during the assault with intent to murder while armed of Darnell Murphy | D.C. Code §§ 22-3201(b), -3204(b) |
| 71 | Possession of a firearm during the assault with intent to murder while armed of Kerbin Johnson | D.C. Code §§ 22-3201(b), -3204(b) |
| 73 | Possession of a firearm during the assault with intent to murder while armed of Mark Barnes | D.C. Code §§ 22-3201(b), -3204(b) |
| 82 | Possession of a firearm during the first-degree murder while armed of Robert Keys | D.C. Code §§ 22-3201(b), -3204(b) |

*See* Verdict Forms at 28–33.[1]

In December 2004, this Court sentenced Mr. Marbury. As to Count 1, the Court concluded that "the murders of Anthony Payton, Damien Jennifer, Robert Keys, Sherman Johnson, and Edgar Watson were reasonably foreseeable to defendant Marbury and that he is properly held accountable for these murders as acts in furtherance of the narcotics conspiracy charged in Count One." *Bostick*, 791 F.3d at 158. Guided by the U.S. Sentencing Guidelines, the Court calculated a base offense level of 43.[2] *Id.* That base offense level, combined with Mr. Marbury's criminal history category of I, dictated a term of life imprisonment. *See* Gov't Opp'n at 7. However, the Court only imposed 240 months of incarceration, the statutory maximum. *See id.*; J. at 2. As to the D.C. code offenses, this Court sentenced Mr. Marbury as follows: 15 years to life incarceration as to Count 19;[3] 30

---

[1] The jury also found Mr. Marbury guilty of Count 72, possession of a firearm during the assault with intent to murder while armed of Darren Marcus, in violation of D.C. Code §§ 22-3201(b), -3204(b). *See* Verdict Forms at 33. On direct appeal, the Circuit instructed that "Marbury's convictions on Counts 71 and 72" "should merge, and one should be vacated" because "[b]oth convictions arose out of Marbury's uninterrupted possession of a firearm during the assault with intent to murder of police officers Kerbin Johnson and Darren Marcus." *Bostick*, 791 F.3d at 161–62. On remand, this Court accordingly vacated Mr. Marbury's conviction on Count 72. Order, ECF No. 866, at 3.

[2] Specifically, the Court applied U.S.S.G. § 2D1.1(d)(1), which provides: "If a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply §2A1.1 (First Degree Murder)[.]" *See* U.S.S.G. Manual, ch. 2, Part D (2021). Section 2A1.1 establishes a base offense level of 43. *See id.*, Parts A–C.

The government's opposition makes reference to § 2A3.1(c)(1). *See* Gov't Opp'n at 7. This sentencing provision, which applies in criminal sexual abuse cases, is inapplicable here.

[3] The Court also sentenced Mr. Marbury to 15 years to life incarceration as to Count 22. *See* J. at 2. That conviction was later vacated. *See infra* n.6.

3

years to life incarceration as to Counts 20 and 35; 5 to 15 years of incarceration as to Counts 68 through 73 and 82. *See* J. at 2. The Court imposed all sentences to run consecutively to each other.[4] *See id.*

On appeal, the Circuit affirmed Mr. Marbury's judgment. *Bostick*, 791 F.3d at 135. In so doing, the Circuit carefully reviewed—and rejected—the various challenges Mr. Marbury raised, including, as relevant here, the sufficiency of the government's evidence against him, and the Court's jury instructions.

Mr. Marbury claimed that this Court erred by finding that the murders of Anthony Payton, Damien Jennifer, Robert Keys, Sherman Johnson, and Edgar Watson were (1) reasonably foreseeable to him and (2) attributable to the conspiracy. *See id.* at 158. The Circuit found that both arguments were "meritless." *Id.* As to the first, the Circuit noted that "Marbury directly participated in and was convicted of two of the five murders for which he was held accountable—the killing of Payton and Keys." *Id.* As to the second argument, the Circuit rejected Mr. Marbury's account that the killings were committed for reasons other than furthering the goals of the conspiracy.[5] *See id.* at 138–39. In its review of the record, the Circuit specifically noted that Earl Edelin, Tommy Edelin's father and another of Mr. Marbury's co-defendants, "taught" "Marbury[] and others how to use firearms to kill" and that "[h]e gave Marbury a gun to use in the shootings." *Id.* at 139. That evidence, along with statements made by Tommy Edelin to members of the conspiracy referring to the murders, indicated that the "murders were committed, at least in part, to protect the profits and operations of Tommy Edelin's drug distribution enterprise." *Id.*

---

[4] The Court also imposed a $1,200 assessment and restitution in the amount of $24,973.83. *See* J. at 4.

[5] The Circuit refers to these murders as the "Stanton Terrace Crew killings." *See Bostick*, 791 F.3d at 138. Evidence at trial established that Edgar Watson and Anthony Payne were members of the Stanton Terrace Crew. *See* Gov't Opp'n at 3.

4

Mr. Marbury also challenged the sufficiency of the evidence supporting his convictions on Counts 70 through 73, claiming that his firearm possession convictions could not stand because the jury had acquitted him of the underlying assaults. *See id.* at 141. The Circuit rejected that argument as well, stating:

> Multiple cooperating witnesses provided detailed testimony about Marbury's role in the charged assaults, all of which involved shootings directed at the Stanton Terrace Crew. In all but one of the attacks, one of the testifying witnesses had participated in the crime with Marbury. In the remaining instance, that witness testified that Marbury had asked him for help in covering up Marbury's role in the shooting. Another Government witness testified that after that assault, Marbury had asked to trade guns because his gun had a victim's "body" on it. July 2, 2001 Trial Tr. at 12065 (Thomas Sims). According to the witnesses, Marbury carried a firearm during each assault.
>
> Based on that testimony, a rational jury could readily find that Marbury participated in each underlying assault. We therefore affirm his convictions for possession of a firearm during a crime of violence.

*Id.*

Finally, Mr. Marbury challenged this Court's omission of a sentence in the agreed upon jury instructions that "in the defendants' view, would have underscored that the Government must prove each individual defendant's involvement in the conspiracy." *Id.* at 144. The Circuit disagreed, concluding "that the instructions adequately conveyed that an individual defendant must join the conspiracy to be found guilty under 21 U.S.C. § 846." *Id.* Specifically, the Circuit noted that the Court's "instructions repeatedly emphasized that to convict a particular defendant of Count One, the jury must find that the individual defendant knowingly participated in the conspiracy with the specific intent to further its objectives." *Id.* Even though "[t]he omitted sentence would have underscored the point," "the omission of the sentence did not render the instructions erroneous." *Id.* This was especially true in light of the Court's careful instruction to the jury that "a person who has no knowledge of or intent to join the conspiracy, but just happens to act in a way that is of

5

benefit to the conspiracy, or to a conspirator, does not thereby himself become a conspirator." *Id.* (citing Trial Tr. at 21523–24).

Even though the Circuit affirmed his conviction, the Circuit remanded Mr. Marbury's case to this Court for resentencing. A year after Mr. Marbury's original sentencing, the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005), holding that the U.S. Sentencing Guidelines were advisory. Because Mr. Marbury had been sentenced under the mandatory Guidelines regime, the Circuit found that he was "entitled to what our cases have termed a *Booker* remand of the record to determine whether the District Court would impose [a] different sentence[], more favorable to the defendant[], under the advisory Guidelines." *Id.* at 162.[6]

On remand, the Court imposed the same sentence. *See* Mem. Order, ECF No. 919. Because Mr. Marbury was personally convicted of multiple murders, and found responsible for several more due to his membership in the conspiracy, this Court noted that it "did not and does not feel that a constructive life sentence is too harsh a penalty for Marbury's crimes." *See id.* at 2. The Court further noted that "[n]one of the factors laid out in 18 U.S.C. § 3553(a) counsel in favor of a reduction." *Id.* Based on these reasons, the Court determined that, "[h]ad the Guidelines been advisory at the time of [] Marbury's original sentencing, the Court would not have imposed a lesser sentence." *Id.* Mr. Marbury appealed this Court's order and the Circuit affirmed. *United States v. Bostick*, 839 Fed. App'x 556, 557 (D.C. Cir. 2021). The Supreme Court denied Mr. Marbury's petition for certiorari. *Marbury v. United States*, No. 21-6132, 142 S. Ct. 632 (Dec. 6, 2021).

In March 2022, Mr. Marbury moved *pro se* to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. He argues that his sentence must be vacated because it was imposed in

---

[6] In addition to the *Booker* remand, the Circuit instructed the Court on remand to: (1) merge Mr. Marbury's convictions on Counts 71 and 72, discussed *supra* n.1; and (2) vacate Mr. Marbury's sentence of 15 years to life for Count 22 because he was acquitted of this count. *Bostick*, 791 F.3d at 161.

6

violation of the law. The government opposed and Mr. Marbury replied, ECF No. 964. His motion is now ripe for review.

## II. LEGAL STANDARDS

### A. 28 U.S.C. § 2255

A prisoner may move to vacate, set aside, or correct his sentence if (1) the sentence was imposed "in violation of the Constitution or laws of the United States"; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence "was in excess of the maximum authorized by law"; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The prisoner bears the burden to prove his right to relief by a preponderance of the evidence. *United States v. Baugham*, 941 F. Supp. 2d 109, 112 (D.D.C. 2012). While a district court must construe *pro se* filings liberally, *see United States v. Arrington*, 763 F.3d 17, 22 (D.C. Cir. 2014), a court need not hold an evidentiary hearing when "the motion and the files and records of the case conclusively show the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b).

### B. Cause, Prejudice, and Actual Innocence

"It is well established in the federal circuits that a federal prisoner cannot raise collaterally any issue litigated and adjudicated on a direct appeal from his conviction, absent an intervening change in the law." *Garris v. Lindsay*, 794 F.2d 722, 726 (D.C. Cir. 1986) (per curiam) (internal citations omitted). Claims that were not raised on direct review will be considered in a Section 2255 motion only if the petitioner can demonstrate (1) "cause" and "prejudice" or (2) that he is "actually innocent." *See Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 622 (1998). Cause may be shown where a claim is "so novel that its legal basis is not reasonably available to counsel," but "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." *Bousley*, 523

7

U.S. at 622–23 (internal quotations and citations omitted). To establish "prejudice," a petitioner must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphases in original); *United States v. Pettigrew*, 346 F.3d 1139, 1144 (D.C. Cir. 2003).

If a defendant can prove that he is actually innocent of the charged offense, procedural bars will not apply. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). But "tenable actual-innocence gateway pleas are rare[.]" *Id.* A defendant must demonstrate that "in light of . . . new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). "Actual innocence means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623. Ineffective assistance of counsel claims fall outside the requirements of the cause and prejudice rule, however, as they may be raised in collateral proceedings under Section 2255. *See Baugham*, 941 F. Supp. 2d at 112 (citing *Massaro*, 538 U.S. at 504).

### C. Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner "must prove both incompetence and prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Specifically, the petitioner must demonstrate that (1) "counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). That sets a high bar, as a court's evaluation of counsel's actions "must be highly deferential," and is assessed under the circumstances present at the time of representation without the benefit of hindsight. *Id.* at 689.

Furthermore, a "reasonable probability" under *Strickland*'s second prong is one that is "sufficient to undermine confidence in the outcome." *Id.* at 694. To find prejudice, the petitioner must show there is "a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (internal quotations and modifications omitted). An ineffective assistance of counsel claim is defeated if the defendant fails to demonstrate either prong. *Strickland*, 466 U.S. at 700.

### III. DISCUSSION

Mr. Marbury collaterally challenges the constitutionality of his convictions in three main ways:[7] (1) he is "actually innocent of his alleged conspiracy predicated on the crime of violence involving count(s) 35 thru [*sic*] 42 in connection with 18 U.S.C. §924(c)," Def.'s Mot. at 5–10, (2) this Court violated the Sixth Amendment in sentencing him, *see id.* at 12, 16–17, and (3) he was denied effective assistance of counsel, *see* Def.'s Reply at 4–5.[8] The government argues that all of Mr. Marbury's claims are procedurally barred or meritless. Gov't Opp'n at 1–2. This Court agrees.

#### A. Mr. Marbury's Claims Are Timely

As a threshold matter, Mr. Marbury's claims are not time-barred. Under the Anti-Terrorism and Effective Death Penalty Act, a defendant must bring any Section 2255 claims within one year of when the "judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). A judgment of

---

[7] Mr. Marbury's motion notes "Argument One," *see* Def.'s Mot. at 4–9, "Argument Two," *see id.* at 9–12, and "Argument Three," *see id.* at 12–17. The government understands Mr. Marbury's motion as "essentially rais[ing] two main arguments." Gov't Opp'n at 1. The Court, in construing Mr. Marbury's *pro se* submission liberally, views Mr. Marbury's filings as raising three arguments, but not as he so styled them. Specifically, the Court considers "Argument Two" to be a restatement of the first part of "Argument One" and therefore will not independently consider it. Additionally, the Court views Mr. Marbury's reply as clarifying that he is indeed raising ineffective assistance of counsel claims, even though the government did not read his motion as raising these claims. *See* Def.'s Reply at 4–5; Gov't Opp'n at 11–12 n.4.

[8] Mr. Marbury makes his ineffective assistance of counsel claims explicit for the first time in reply. Generally, a court need not consider arguments made for the first time in a reply brief. *See United States v. Brown*, 249 F. Supp. 3d 287, 295 n.1 (D.D.C. 2017). However, given his reference to ineffective assistance of counsel in his original motion, *see* Def.'s Mot. at 18, along with the liberal construction of *pro se* submissions, *see Arrington*, 763 F.3d at 22, the Court will consider the new claims raised in reply as well.

conviction is "final" when the Supreme Court denies a petition for writ of certiorari. *See Clay v. United States*, 537 U.S. 522, 527 (2003). Accordingly, Mr. Marbury's conviction became final on December 6, 2021. *See Marbury*, 142 S. Ct. 632. Mr. Marbury attested to submitting his motion on March 28, 2022. *See* Def.'s Mot. at 21. Motions by *pro se* prisoners are considered filed when placed in the prison mailing system. *See Blount v. United States*, 860 F.3d 732, 741 (D.C. Cir. 2017). Because Mr. Marbury filed his motion less than one year after his conviction became final, his motion is timely.

### B. Mr. Marbury's Actual-Innocence Argument Is Without Merit

Mr. Marbury argues that he is "actually innocent of his alleged conspiracy predicated on the crime of violence involving count(s) 35 thru [*sic*] 42 in connection with 18 U.S.C. §924(c)" for three reasons: (1) "conspiracy is not a crime of violence under the principles enumerated in *United States v. Davis*, 139 S. Ct. 2319 (2019),"[9] (2) "he was convicted and sentenced for a racketeering conspiracy[] predicated on a statute declared to be unconstitutionally vague"; and (3) "the evidence adduced at trial was insufficient to sustain the convictions." Def.'s Mot. at 5–10. The government argues that Mr. Marbury's arguments are meritless. *See* Gov't Opp'n at 11–14.[10]

The first prong of Mr. Marbury's actual-innocence argument falters because his conspiracy conviction (Count 1), was predicated on narcotics distribution, not a crime of violence. Mr. Marbury was convicted of conspiracy to distribute and possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 846. The jury determined that the government

---

[9] In *Davis*, the Supreme Court held 18 U.S.C. § 924(c)(3)(B), the statute's so-called "residual clause," to be unconstitutionally vague. 139 S. Ct. at 2336.

[10] The government also argues that this claim is procedurally barred because the Supreme Court decided *Davis* while the Circuit's mandate on his direct appeal was still pending and he failed to raise the *Davis* claim in his petition for rehearing. *See* Gov't Opp'n at 11–12. The Court finds that Mr. Marbury adequately explained cause and prejudice excusing his failure to raise the claim on appeal and thus does not find the claim procedurally barred. *See* Def.'s Reply at 18–19. Nevertheless, the claim is without merit.

10

had established beyond a reasonable doubt that the controlled substance was cocaine base and that Mr. Marbury was responsible for less than 5 grams. *See* Verdict Forms at 28–29. Thus, the conspiracy charge—and conviction—was predicated on Mr. Marbury's involvement in the distribution, possession, and intent to distribute narcotics, not a crime of violence.

Moreover, as the government correctly points out, Mr. Marbury was only convicted of one of the counts he cites (albeit incorrectly) as the predicates for Count 1: Count 35, First-degree murder while armed of Robert Keys in violation of D.C. Code §§ 22-2401, -3202, and -105. *See* Gov't Opp'n at 12; Verdict Forms at 32. Mr. Marbury was *acquitted* of Count 36, *see* Verdict Forms at 32, and Counts 37–42 charged Mr. Marbury's co-conspirators, not Mr. Marbury, *see* Gov't Opp'n at 12. Mr. Marbury was charged with two other counts of violating 18 U.S.C. § 924(c)—Counts 51 and 53—but was acquitted of both. *See* Verdict Forms at 32.

To the extent that Mr. Marbury's actual-innocence claim challenges this Court's finding that the murder of Keys was attributable to the conspiracy, this argument cannot be raised in a collateral attack because Mr. Marbury already raised it on direct appeal. *Garris*, 794 F.2d at 726. Even so, the Circuit previously rejected this argument as "meritless" when it determined, after examining the extensive trial record, that the "murders were committed, at least in part, to protect the profits and operations of Tommy Edelin's drug distribution enterprise." *See Bostick*, 791 F.3d at 158.

Finally, Mr. Marbury's argument would be unavailing even liberally construing his motion as challenging the constitutionality of his convictions for the D.C. Code equivalent of 18 U.S.C. § 924(c)—Counts 68 through 73 and 82. The D.C. Court of Appeals has held that provisions of the D.C. Code criminalizing possession of a firearm during a crime of violence are not unconstitutionally vague. *See Arrington v. United States*, 238 A.3d 218, 221 (D.C. 2020).

11

The second and third prongs of Mr. Marbury's actual-innocence claim are also without merit. Mr. Marbury was, in fact, *acquitted* of Count 3, the RICO conspiracy charge. *See* Verdict Form at 29. And he already challenged the sufficiency of the evidence against him on direct appeal and the Circuit disagreed. Thus, he may not raise the same claim in a collateral attack. *Garris*, 794 F.2d at 726.

Finally, Mr. Marbury misunderstands the actual-innocence standard. A defendant asserting an actual-innocence argument must "persuade[] the district court that, in light of . . . new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin*, 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 329). A "prototypical example," for instance, "is the case where the State has convicted the wrong person of the crime." *Sawyer v. Whitley*, 505 U.S. 333, 340 (1992) (internal quotation marks omitted). Mr. Marbury does not bring new evidence showing his factual innocence. Instead, his arguments center only on "mere legal insufficiency," which is not enough to avail himself of the actual-innocence exception. *Bousley*, 523 U.S. at 623.

Therefore, Mr. Marbury has not established that his sentence was imposed in violation of law based on actual innocence.

### C. Mr. Marbury's Sixth Amendment Claim Is Without Merit

Mr. Marbury avers that this Court violated his Sixth Amendment rights in two ways in imposing his sentence, but both arguments miss the mark.

First, he argues that the Court impermissibly calculated his sentence by relying on facts in the PSR to determine his sentence for Count 1.[11] He claims that this practice violated the Sixth

---

[11] Mr. Marbury does not specifically refer to Count 1 but repeatedly references the U.S. Sentencing Guidelines and its calculation of possible sentences. *See* Def.'s Mot. at 12–17. Because Count 1 was Mr. Marbury's only federal count of conviction, the Court infers that Mr. Marbury is referring to this conviction. *Cf.* Gov't Opp'n at 15.

Amendment and associated Supreme Court precedent requiring essential elements of crimes to be found by a jury.[12] *See* Def.'s Mot. at 12, 16–17. However, as the government correctly notes, this Court relied on facts specifically found by the jury. *See* Gov't Opp'n at 15.[13] At trial, the jury "found [Mr. Marbury] responsible for several murders committed in furtherance of the Count One drug conspiracy." *Bostick*, 791 F.3d at 158. The Circuit affirmed the validity of this finding by saying that "Marbury directly participated in and was convicted of two of the five murders for which he was held accountable" and that "the record amply support[ed] the inference that the violent campaign against the Stanton Terrace Crew (including the murders of Payton and Keys) was undertaken at least in part to further the profits and operations of the Count One drug conspiracy." *Id.* at 158–59. This Court relied on, and cited, the findings by both the jury and the Circuit in reimposing Mr. Marbury's original sentence. *See* Mem. Order at 2.

Second, Mr. Marbury argues that, in refusing to reduce his sentence on remand, the Court violated the Sixth Amendment by treating the U.S. Sentencing Guidelines as effectively mandatory.[14] *See* Def.'s Mot. at 16–17. Mr. Marbury's argument misunderstands the wide discretion available to a sentencing court. Post-*Booker*, a sentencing court starts by calculating the Guidelines range but is free "to consider all relevant information at an initial sentencing hearing,"

---

[12] *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed"); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("[A]ny fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"); *Alleyne v. United States*, 570 U.S. 99, 104 (2013) ("[A]ny fact that increases the mandatory minimum is an 'element' that must be submitted to the jury").

[13] The government argues in the alternative that any Sixth Amendment challenges to his sentence are procedurally barred because he failed to raise them on direct appeal. *See* Gov't Opp'n at 15. Since it is unclear whether the error Mr. Marbury claims occurred during the Court's original sentencing or the *Booker* remand resentencing, and mindful of the liberal construction of *pro se* filings, this Court does not conclude that Mr. Marbury's claim is procedurally barred. Regardless, his claim is without merit.

[14] The Supreme Court in *Booker* held that mandatory application of the Guidelines was unconstitutional under the Sixth Amendment because it removed the jury's role in deciding whether the government had sufficiently proven facts necessary to support a sentence. *See* 543 U.S. at 249–58.

and "[t]hat discretion also carries forward to later proceedings that may modify an original sentence." *Concepcion v. United States*, 142 S. Ct. 2389, 2399 (2022). In fact, "[t]he only limitations on a court's discretion to consider any relevant materials at an initial sentencing or in modifying that sentence are those set forth by Congress in a statute or by the Constitution." *Id.* at 2400. Here, the Court properly recognized the only relevant limitation on its sentencing discretion—the statutory maximum of 240 months' incarceration for Count 1. The Court then sentenced Mr. Marbury considering the record, including the jury's verdict and the Circuit's findings on appeal. Imposing the same sentence on remand is an exercise well within the court's discretion. *See In Re Sealed Case*, 573 F.3d 844, 853 (D.C. Cir. 2009).

Thus, as with Mr. Marbury's actual-innocence argument, he has not established that his sentence was imposed in violation of the Sixth Amendment.

### D. Mr. Marbury's Ineffective Assistance of Counsel Claims Are Without Merit

Finally, Mr. Marbury raises various ineffective of counsel claims. He argues that his trial counsel "failed to object to [a] jury instruction that omitted essential mens rea element of acquitted charged offense" and "was ineffective for failing to move for a judgment of acquittal based upon the insufficiency of the government's evidence" against him. Def.'s Reply at 4–5. Next, he faults his appellate counsel for counsel's: "failure to raise . . . [meritorious] issue [on trial court's refusal to grant defense counsel's request for jury instruction defining element of crime] and [appellate counsel's decision instead to raise weaker issues were unlikely to succeed fell below prevailing norms of professional conduct." *Id.* at 4 (alterations in original). Relatedly, Mr. Marbury contends that the Court gave an "erroneous jury instruction [that] reduced the government's burden of proof[,]" essentially "permit[ing] a murder conviction based on a preponderance of the evidence that prior uncharged crimes occurred" and that appellate counsel were ineffective when counsel

14

"failed to seek plain error review." *Id.* at 4–5 (alterations in original). Mr. Marbury's arguments fall short of the required *Strickland* prongs of deficiency and prejudice.

Mr. Marbury's two arguments alleging his trial counsel's ineffectiveness are unavailing. Regarding the first argument, he is correct that his trial counsel failed to object to the Court's inadvertent omission of one sentence in the jury instructions. However, the Circuit reviewed the issue for plain error and found that "[t]here was no error, much less plain error." *See Bostick*, 791 F.3d at 144. Therefore, Mr. Marbury cannot show a "reasonable probability" of a different jury verdict had the jury heard the omitted sentence, let alone a "substantial" "likelihood" of a different result. *Cullen*, 563 U.S. at 189. As for his second argument, Mr. Marbury's counsel *did* move for a judgment of acquittal. *See* Mot., ECF No. 549. This Court held a hearing on the motion and granted judgment of acquittal on two counts not relevant here but denied the motion in all other respects. *See* Mot. Hearing (08/14/2001). Therefore, the "Court will not find defective performance based solely on counsel losing an argument." *United States v. Martin*, No. 98-cr-329 (RCL), 2021 WL 4989983, at *17 n.14 (D.D.C. Oct. 27, 2021).

Mr. Marbury's complaints about his appellate counsel also fail to satisfy *Strickland*. With regard to the first prong—deficient performance—it is well-settled that courts reviewing Section 2255 motions "will not second guess reasonable tactical choices by defense counsel." *United States v. Catlett*, 97 F.3d 565, 571 (D.C. Cir. 1996). Mr. Marbury faults appellate counsel for not raising issues regarding jury instructions refused or given by this Court and instead focusing on other "weaker" arguments. *See* Def.'s Reply at 4. As the Supreme Court has recognized, appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). On appeal, the Circuit noted that

15

appellate counsel had "raised a great number and variety of arguments." *See Bostick*, 791 F.3d at 135. While Mr. Marbury may disagree with the arguments that counsel chose to devote resources to, he has not explained why his appellate counsel's strategy fell below the objective standard of reasonableness, especially given the court's "highly deferential" review of his counsel's choices. *Strickland*, 466 U.S. at 689.

Finally, the cases upon which Mr. Marbury relies to establish that errors by his appellate counsel caused prejudice under *Strickland*'s second prong miss the mark. Mr. Marbury cites *Molina-Martinez v. United States*, 578 U.S. 189, 198 (2016) and *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1908 (2018) for the proposition that errors in calculating a Guidelines range are presumptively prejudicial. Def.'s Reply at 5–6. However, that proposition is inapplicable here. The Circuit already determined that this Court properly calculated Mr. Marbury's Guidelines range. *See Bostick*, 791 F.3d at 158. Therefore, Mr. Marbury cannot establish prejudice either.

\* \* \*

To sum up, Mr. Marbury's claims are without merit and he has not offered new evidence that he is actually innocent. Moreover, his actual-innocence arguments focused on the *legal* insufficiency of his convictions, not the factual insufficiency. For these reasons, the Court will **DENY** his motion to vacate, set aside, or correct his conviction under 28 U.S.C. § 2255.

### IV. CERTIFICATE OF APPEALABILITY

Before appealing a final order denying a Section 2255 motion, a court must "issue or deny a certificate of appealability." Rules Governing § 2255 Proceedings, Rule 11(a). The defendant may not appeal a final order without this certificate of appealability, which requires "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). Doing so requires the defendant to demonstrate "that reasonable jurists could debate whether (or, for that matter, agree

that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983) (internal quotation marks omitted)). When a district court denies relief on procedural grounds, the defendant must also show that reasonable jurists would debate "whether the district court was correct in its procedural ruling." *United States v. Baxter*, 761 F.3d 17, 26 n.10 (D.C. Cir. 2014) (quoting *Slack*, 529 U.S. at 484).

Mr. Marbury's arguments are without merit and his actual-innocence claim focused on the legal insufficiency of his convictions, not the factual insufficiency. For these reasons, the Court finds that reasonable jurists would not debate whether Mr. Marbury's claims deserve encouragement to proceed further. Mr. Marbury has not made a substantial showing of the denial of a constitutional right. The Court will therefore decline to issue a certificate of appealability for Mr. Marbury's claims.

## V. CONCLUSION

For these reasons, the Court concludes that Mr. Marbury's motion and the record in his case do not show his entitlement to relief. The Court declines to hold an evidentiary hearing, *see* 28 U.S.C. § 2255(b), and will **DENY** Mr. Marbury's motion. No certificate of appealability shall issue. A separate Order consistent with this Memorandum Opinion shall issue this date.

SIGNED this 9th day of January, 2023.

Royce C. Lamberth
United States District Judge